**UNITED STATES of America, Plaintiff,**

v.

**Louis M. MOLANDER, Defendant.**

**No. 88–CR–2–S.**

United States District Court,
W.D. Wisconsin.

April 15, 1988.

Patrick J. Fiedler, U.S. Atty. by Jeffrey M. Anderson, Asst. U.S. Atty., for plaintiff.

W. Dan Bell, Madison, Wis., for defendant.

## ORDER

SHABAZ, District Judge.

The defendant's motion to declare the sentencing guidelines unconstitutional came on to be heard before the Court in the above entitled matter on March 21, 1988, the government having appeared by Patrick J. Fiedler, United States Attorney, by Jeffrey M. Anderson, Assistant United States Attorney; the Department of Justice Appellate Criminal Division by Karen Scrivseth; the U.S. Sentencing Commission by Stephen G. Gilles; the defendant in person and by W. Dan Bell and Public Citizen Litigation Group, by Patti A. Goldman. The Hon. John C. Shabaz, District Judge, presided.

The defendant Louis M. Molander has moved the Court to declare the Sentencing Guidelines issued by the United States Sentencing Commission unconstitutional on the grounds that the delegation to the Sentencing Commission to issue the guidelines is excessive and that the composition of the Commission, as well as the method of appointment and removal of its members, violates the doctrine of separation of powers.

The defendant in his motion addresses the constitutionality of the Sentencing Reform Act, 28 U.S.C. §§ 991–998 (1987), specifically arguing that the delegation to the Sentencing Commission of the authority to establish sentencing guidelines is excessive, that Congress may not delegate this authority to the judicial branch, and further, that the composition of the Commission, as well as the method of appointment and removal of its members, violates the doctrine of the separation of powers. Although counsel for the Department of Justice has not specifically referred to the issue of ripeness, it would appear that some reference to standing has been made. It is important to address this concern, and

accordingly the Court has examined the recent decision in *United States v. Chambless*, 680 F.Supp. 793 (E.D.La, 1988) where that court has determined that standing exists. Molander faces a period of supervised release under the guidelines to which he would not otherwise be subjected, and his actual time served would more likely be greater under the guidelines because of the abolition of the parole system.

For these reasons alone this defendant has standing, even though he may not be subject to a heavier sentence under the guidelines.

As for background, the Court looks first to the policy statement of April 13, 1987 and the supplemental report on the initial sentencing guidelines and policy statements of June 18, 1987, believing it appropriate to briefly articulate the authority suggested. The United States Sentencing Commission is an independent agency in the judicial branch composed of seven voting and two nonvoting *ex officio* members. Its principal purpose is to establish sentencing policies and practices for the federal criminal justice system that will assure the ends of justice by promulgating detailed guidelines prescribing the appropriate sentences for offenders convicted of federal crimes. The members are to be appointed by the President for an initial period of six years and removed by the President for "neglect of duty or malfeasance in office or other good cause shown." Congressional approval of the guidelines was not required, nor provided. The law provided only that Congress could by a vote of both Houses refuse to adopt those rules promulgated by the Commission, which legislative action was subject to further executive action.

There was no affirmative legislative action; no such action was taken when the guidelines were submitted.

The duties of the Commissioners have been clearly stated by the United States District Court for the Southern District of California in which the Hon. Rudi M. Brewster, District Judge, stated those duties, to include the promulgation and distribution to all courts of the United States and to the United States Probation System of the following:

1) sentencing guidelines for use of sentencing courts for most federal crimes;

2) general policy statements explaining application of the guidelines or any other aspect of sentencing or sentencing implementation in furtherance of congressional purposes established by statutes, including, but not limited to the following:

  a) sanctions;

  b) conditions of probation and supervised release;

  c) sentence modifications;

  d) imposition of fines;

  e) plea agreement authorities and implementations;

  f) temporary release provisions and pre-release custody;

  g) guidelines for revocation of probation;

3) reports of compliance by sentencing courts obtained by monitoring procedures;

4) consideration of petitions of defendants requesting modification of guidelines utilized in sentencing that defendant;

5) research and development for future amendments and improvements to the sentencing mission; and

6) periodic training programs for all involved persons.

The Commission acts by an affirmative vote of at least four voting members to establish all general policies, rules and regulations for Commission functions under § 994(a).

*United States v. Arnold*, 678 F.Supp. 1463, 1465 (S.D.Cal.1988).

The Court now examines the three basic positions which the defendant has suggested. First, the delegation to the Sentencing Commission of the authority to establish sentencing guidelines is excessive because Congress failed to make the necessary policy judgments and gave the Commission insufficient standards to guide its work.

Second, if Congress has the power to delegate this authority at all, it may not delegate it to a body which by statute is

part of a judicial branch of government and has among its members three federal judges, for it is only the executive branch that has the constitutional power to execute the laws, which is what the Commission is doing if it is not, in fact, legislating.

Third, that if the delegation could be made to a body within the judicial branch of the government composed entirely of three independent Article III judges, the Sentencing Commission is not so constituted because its members include a majority of nonjudges and because the President, the head of the executive branch, retains substantial powers over the Commission through his ability to reappoint members and to remove them for cause.

The government's memorandum in opposition to the defendant's motion suggests that this case would be very straightforward except for one short phrase in the Sentencing Reform Act; although Congress created a Sentencing Commission with all the attributes of an executive agency and assigned it in an executive function, Congress designated the Commission "an independent commission in the *judicial branch*," 28 U.S.C. § 991(a). If the Congressional designation is correct, then two potential constitutional problems with the Commission's composition would appear to exist: that Congress has assigned an executive function—rule making—to a judicial entity in violation of Article III, and that Congress has created a judicial entity whose members are removable by the President in violation of separation of powers principles set forth in *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). The government, however, argues that these problems would completely disappear if one looks at what Congress did, not what it said it did. Convincing, perhaps, until the Court examines in depth the memorandum of the United States Sentencing Commission.

That Commission's position, by contrast, is that Congress may constitutionally create an independent body in the judicial branch that is authorized to perform the special sort of activity at issue here, rule making that is in aid of the judicial function of pronouncing sentence, and that is intended to rationalize and control the delegated sentencing discretion of federal judges. "Indeed, we suggest to the Court that, accepting as we all must the policy judgement made by Congress regarding sentencing reform, it is impossible to fault the mechanism designed by Congress to carry out its purposes."

The Sentencing Commission then lauds the wisdom of Congress in its enactment of this proposal recognizing, of course, that no matter how wise Congress may have been, nonetheless, it is subject to constitutional limitations.

The Court believes that this then sets forth the positions which it has been asked to address—excessive delegation; delegation of an executive function to the judicial branch; and the Commission is in violation of the doctrine of separation of powers because of its composition and the manner in which its members may be appointed and removed.

The first objection is without merit. There has been no excessive delegation. An examination of the Act would suggest that Congress has provided sufficient guidance to direct implementation of the Act by the Commissioners. The United States Supreme Court has struck down a statute by reason of undue delegation of legislative power only twice, at a time when there was a great deal of philosophical discussion concerning that delegation which a legislative body may provide to an executive agency. Since that time it has been recognized that there can be significant delegation. There are clear policy statements within the Act to guide the Commission in exercising the delegated rule-making authority. Intelligible principles to assist the Commission are contained in the Act as well as specific sentencing preferences for certain categories of offenses. This Court does not believe that the excessive delegation argument bears further discussion other than to address briefly *Synar v. United States,* 626 F.Supp. 1374 (D.D.C.1986), where the court addresses the issue of those powers which could not be conferred upon the Comptroller General.

The essential inquiry is whether the specified guidance sufficiently marks the field within which the Administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will.

*Id.* at 1387, (quoting *Yakus v. United States,* 321 U.S. 414, 425, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944)).

The totality of the Act's standards, definitions and context provides an adequate intelligible principle to guide and confine administrative decisionmaking.

After first concluding that the Act provides ample statements of policy and specific rules to guide the Commissioners' exercise of delegated authority, and after stating that the Act does not represent an excessive delegation of legislative power, the Court then addresses those further objections.

The Commission, as an independent agency in the judicial branch, must face *Buckley v. Valeo, Secretary of the United States Senate,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975), which has not been overruled and where at page 123 the Supreme Court states:

This court has not hesitated to enforce the principle of separation of powers embodied in the Constitution when its application has proved necessary for the decisions of cases or controversies properly before it. The Court has held that executive or administrative duties of a nonjudicial nature may not be imposed upon judges holding office under Art. III of the Constitution.

The Court continues at page 137:

Insofar as the powers confided in the Commission are essentially of an investigative and informative nature, falling in the same general category as those powers which Congress might delegate to one of its own committees, there can be no question that the Commission, as presently constituted, may exercise them.

Were the function of the Sentencing Commission only informative and investigative, there would be no question that its independent agency status in the judicial branch would meet constitutional muster.

When we go beyond this informational authority to the more substantial rule-making powers performed by the Commission, we reach a different result. The Commission has been impermissibly designated a judicial agency. These same results are reached in the *In re President's Commission on Organized Crime Subpoena of Scaduto,* 763 F.2d 1191 (11th Cir.1985), and *In re President's Commission on Organized Crime Subpoena of Scorfo,* 783 F.2d 370 (3rd Cir.1986). These cases specifically provide that there shall be no improper merging of the branches of government. In the Crime Commission cases the judicial members exercise no powers of the judiciary while serving on the Commission; the judges do not wear their robes while performing their functions; nor do they perform rulemaking or other executive functions. The Crime Commissions were law enforcement agencies engaged in activities in which federal judges perhaps should not have been involved, but their roles were not other than investigating, reporting and recommending.

The Court determines from its examination of this trilogy of *Buckley, Scaduto* and *Scorfo* that an independent agency in the judicial branch may not perform the duties of an executive agency. The rule-making procedure performed by the Sentencing Commission cannot be likened to advisory committees on the Rules of Civil or Criminal Procedure. There is a great difference in function between members of the judiciary addressing themselves to appropriate rules of civil and criminal court procedure and the substantive activities pursued by members of the Sentencing Commission.

*Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987) has provided an appropriate explanation of sentencing guidelines similar to those which are before this Court:

Nor do the revised guidelines simply provide flexible "guideposts" for use in the exercise of discretion; instead, they create a high hurdle that must be cleared before discretion can be exercised, so

that a sentencing judge may impose a departure sentence only after first finding "clear and convincing reasons" that are "credible," "proven beyond a reasonable doubt," and "not ... a factor which has already been weighed in arriving at a presumptive sentence."

Although the distinction between substance and procedure might sometimes prove elusive, here the change at issue appears to have little about it that could be deemed procedural.

Justice O'Connor might have been discussing the federal sentencing guidelines when addressing those enacted by the Florida Legislature. The substantive differences between Rules of Civil Procedure, Rules of Criminal Procedure and the sentencing guidelines are far too great to even suggest that members of the judiciary can participate in their promulgation.

In examining the role of the judiciary we must further examine that which the Supreme Court stated in *United States v. Nixon*, 418 U.S. 683, 704, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974):

Notwithstanding the deference each branch must accord the others, the "judicial power of the United States" vested in the federal courts by Article III § 1 of the Constitution can no more be shared with the Executive branch than the Chief Executive, for example, can share with the Judiciary the veto power or that Congress can share with the Judiciary the power to override a Presidential veto. Any other conclusion would be contrary to the basic concept of separation of powers and the checks and balances that flow from the scheme of a tripartite government.

The fine distinction between the role of a judge and the Court in this executive process is unavailing. There has been an improper delegation to the judicial branch by Congress in creating this independent agency. The Sentencing Commission cannot reside in the judicial branch. Even were this provision severed, however, the remainder of the Act could not be saved.

The Department of Justice suggests severance, and although the Commission is adamant that delegation to the judicial branch of government is appropriate, nonetheless it too recognizes that severability could be considered in order to save the millions of dollars in time and effort that this extensive enactment has consumed.

*INS v. Chadha*, 462 U.S. 919, 931, 103 S.Ct. 2764, 2774, 77 L.Ed.2d 317 (1983) is of some assistance to the government's position.

[I]nvalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.

■ A provision is severable if what remains after severance is fully operative as a law. If we remove the judicial label given the branch to which this independent agency has been assigned, the legislation cannot be saved. It would appear, however, that the effort should be made. The Court's concern is not exclusively *Chadha*, but those other decisions which have perhaps culminated in *Alaska Airlines, Inc. v. Brock*, —— U.S. ——, 107 S.Ct. 1476, 1481, 94 L.Ed.2d 661 (1987).

The unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted.

The argument of the Commission and an examination of the Senate report indicates that it was essential to the members of Congress, particularly to the United States Senators, that this agency be placed in the judicial branch. This was the intention and counsel for the Commission strenuously argues that it was an essential requirement. Would the intentions of Congress be satisfied with the elimination of the judicial label, allowing the Sentencing Commission to remain as a free-standing executive agency, as indeed it should have been as suggested by the government? Does the validity of the statute depend upon the validity of the constitutionally offensive provision?

■ The Court believes that in this case, unless there is specific evidence that Congress intended otherwise, the objectional

provision can be excised. The Court, however, need not perform this surgery. The very composition of the independent agency itself consists of three Article III judges. An executive agency continues where three Article III judges perform executive functions. They promulgate substantive rules which offset substantive rights of this and all other defendants. These guidelines are more than just guideposts to the Court. If severed, that which remains is an executive agency which cannot function with its present membership.

The Court concludes by examining *Synar v. United States*, 626 F.Supp. 1374 (D.D.C.1986) once again, where the Court was concerned with the powers which were vested in the Comptroller General.

> We do not minimize the effect of our invalidation of one small section of the Act upon the entire statutory scheme. Our holding today eliminates the automatic deficit reduction process and gives effect to the prescriptions of the Directors of the OMB and CBO only to the extent that they are adopted by joint resolution.... It may seem odd that this curtailment of such an important and hard-fought legislative program should hinge upon the relative technicality of authority over the Comptroller General's removal—particularly when we have rejected the more intuitive "excessive delegation" arguments that were the focus of the attacks upon the legislation by its opponents on the floor of Congress and by the plaintiffs here. But the balance of separated powers established by the Constitution consists precisely of a series of technical provisions that are more important to liberty than superficially appears, and whose observance cannot be approved or rejected by the courts as the times seem to require. Both of these points have been eloquently expressed by a respected scholar in course of discussing application of the Constitution's guarantee against removal of judges to officials appointed under Article I but in fact exercising Article III judicial powers....
> "Those who wrote the Constitution, however, did not employ this technique. Rather, they emphasized the virtues of limiting governmental power and then dividing the remaining power among autonomous government compartments. Hence, most of our constitutional rights of individual liberty or autonomy are stated in constitutional amendments. The body of the Constitution as originally written is principally an exercise in applying the concepts of federalism and separation of powers to the new American nation. The framers were not disciples of John Stuart Mill, who had not yet been born, but of Montesquieu, whom they had read carefully.
> As a nation, one question we must face every day is how far judges and legislators should be separated. Many rational answers to that question are possible. The United States has chosen, by the device of a written Constitution, and on the basis of specific historical experience, to resolve that question at one time and in one way for almost all cases. To respect that judgment promotes stability, predictability and consistency, and avoids constant reexamination of troublesome policy issues underlying the question."

*Id.* at 1403–04 (quoting Krattenmaker, *Article III and Judicial Independence, Why the New Bankruptcy Courts are Unconstitutional*, 70 Geo.L.J. 297, 301–02, 311 (1981).

In *Bowsher* an officer of the legislative branch was not allowed to serve in the executive branch; nor should a member of the judiciary serve in that capacity. The exception if made here is applicable to the Federal Trade Commission, the Securities Exchange Commission and all other executive agencies.

The Court is of the opinion that the arguments offered in an attempt to save the sentencing guidelines are inappropriate and do not stand the test of time. Moreover, the Commission recognizes the unconstitutional removal powers given the President over the Article III judges who serve on the Commission and suggests at page 32 of its brief yet another severance to save this Act.

**708**

Of course, if the statute cannot constitutionally confer power on the President to remove members of the Commission for "good cause" the defect may be cured by severing the removal provision and leaving the rest of the statute intact.

Were the Court to sever the designated language to which the Department of Justice refers, the Act would remain unconstitutional. It would violate the separation of powers doctrine because of the composition of the Commission. By mandating the inclusion of at least three Article III judges, the Act unconstitutionally impairs its functions and the judicial branch as a whole.

This Court further concludes that the parties cannot demonstrate an overriding need to justify the inclusion of Article III judges on the Commission. Certainly the expertise, understanding, investigative assistance and information which judges can provide is necessary and available. This can be provided, however, without granting the judiciary or members thereof substantive rule-making authority which function belongs in the executive branch and which must be performed by members of that executive branch who are not members of the judiciary. The composition violates the doctrine of separation of powers.

### ORDER

IT IS ORDERED that the defendant's motion is GRANTED.

IT IS FURTHER ORDERED that the Sentencing Commission Guidelines are declared unconstitutional and invalid.