UNITED STATES of America, Plaintiff,

v.

Derrick Deon HORTON, Defendant.

Crim. No. 4–87–128.

United States District Court,
D. Minnesota,
Fourth Division.

May 20, 1988.

Richard E. Vosepka, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Daniel M. Scott, Public Defender, and Cecilia M. Michel, Asst., Minneapolis, Minn., for defendant.

David E. Anderson, Deputy General Counsel, U.S. Sentencing Com'n, Washington, D.C., amicus curiae U.S. Sentencing Com'n.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

On February 4, 1988, defendant Derrick Deon Horton was convicted by a jury of one count of possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), and of one count of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846. Because the criminal conduct occurred after November 1, 1987, the Sentencing Guidelines promulgated by the United States Sentencing Commission govern sentencing according to the Sentencing Act.[1] Now before the court is defendant's motion to preclude the application of the guidelines on the ground that the Sentencing Reform Act of 1984 is unconstitutional. Both the government and the Sentencing Commission oppose the motion, although they advance different arguments.[2]

### I.

The Sentencing Reform Act of 1984 (the Act),[3] Pub.L. No. 98–473, 98 Stat. 1987, created the United States Sentencing Commission (Commission) "as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). The seven voting members of the Commission are appointed by the President with the advice and consent of the Senate. *Id.* The Attorney General or his designee serves as an ex officio, nonvoting member. *Id.* The Act directs that "[a]t least three of the members shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States." *Id.* The members are subject to removal by the President "for neglect of duty or malfeasance in office or for other good cause shown." *Id.* The Commission was directed to establish sentencing policies and prac-

1. *See* Sentencing Act of 1987, Pub.L. No. 100–182, 101 Stat. 1266.

2. In an order dated April 12, 1988, the court granted the Sentencing Commission leave to appear as *amicus curiae.* All parties participated in oral argument on April 19, 1988. All of the judges in this district who handle criminal cases listened to the arguments.

3. The Act was passed as Chapter II of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1976.

tices that would provide certainty and fairness, avoid unwarranted sentencing disparities, and maintain adequate flexibility. 28 U.S.C. § 991(b)(1). Under the Act, the guidelines promulgated by the Commission were to become effective six months after they were submitted to Congress. Pub.L. No. 98–473, § 235(a)(1)(B)(ii)(III), 98 Stat. 2032 (amended by Pub.L. No. 99–646, § 35, 100 Stat. 3599).[4]

In addition to establishing the Commission, the Act effects many other changes governing the imposition of sentences. The court is required to impose a sentence within the guideline range established by the Commission unless it finds that an aggravating or mitigating circumstance exists that was not adequately considered by the Commission. 18 U.S.C. § 3553(b). An elaborate procedure for sentencing is established, including a requirement that the court state its reasons for the imposition of a particular sentence. 18 U.S.C. § 3553(c). Appellate review of sentences under the guidelines may be sought both by the defendant and the government under certain circumstances. 18 U.S.C. § 3742.

Defendant challenges the "designation" provision of the Act which places the Commission in the judicial branch, the "removal" provision which gives the President the power to remove federal judges from the Commission, and the "composition" provision which requires federal judges to be members of the Commission. 28 U.S.C. § 991(a). He contends that the Act violates the constitutional principle of separation of powers by impermissibly expanding the function of the judicial branch, by impairing the judicial function, and by improperly expanding the power of the executive branch. Defendant also claims that the guidelines were promulgated pursuant to an impermissible delegation of legislative power. Because the separation of powers challenge has been the dispositive one when presented to a number of courts,[5] it should be addressed first.

## II.

In considering a challenge to the constitutionality of a statute, the court begins "with the presumption that the challenged statute is valid." *INS v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 (1983). In addition, a statute "is to be construed, if such a construction is fairly possible, to avoid raising doubts of its constitutionality." *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981). At the same time, however, "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *Chadha*, 462 U.S. at 944, 103 S.Ct. at 2781; *see also Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 3193–94, 92 L.Ed.2d 583 (1986).[6]

The constitutional principle of separation of powers is inherent in the structure of

---

4. The guidelines themselves were therefore not enacted by Congress, but rather became effective when Congress failed to act.

5. A number of courts have found that the Act violates the principle of separation of powers. *E.g., United States v. Lopez,* 684 F.Supp. 1506 (C.D.Cal.1988); *United States v. Wilson,* 686 F.Supp. 284 (W.D.Okla.1988); *United States v. Bolding,* 683 F.Supp. 1003 (D.Md.1988); *United States v. Tolbert,* 682 F.Supp. 1517 (D.Kan.1988); *United States v. Estrada,* 680 F.Supp. 1312 (D.Minn.1988); *United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Smith,* 686 F.Supp. 847 (D.Colo.1988); *United States v. Molander,* 683 F.Supp. 701 (W.D.Wis. 1988) (oral ruling); *United States v. Arnold,* 678 F.Supp. 1463 (S.D.Cal.1988).

   Other courts have upheld the Act and the guidelines from such challenges, however. *E.g.,*

*United States v. Johnson,* 682 F.Supp. 1033 (W.D.Mo.1988); *United States v. Erves,* No. CR87–478A (N.D.Ga. Mar. 22, 1988); *United States v. Chambless,* 680 F.Supp. 793 (E.D.La. 1988); *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal.1988).

   Many of these decisions contain discussions describing the background of the Act in considerable detail.

6. The Supreme Court has not been reluctant to strike down statutes that run afoul of separation of powers principles. In *Chadha,* the Court found a legislative veto provision to be unconstitutional which, according to the dissent, existed in more than 50 statutes. 462 U.S. at 1003, 103 S.Ct. at 2811. The court struck down a portion of the Gramm–Rudman–Hollings Act in *Bowsher,* 106 S.Ct. at 3192.

the Constitution which "sought to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility." *Chadha,* 462 U.S. at 951, 103 S.Ct. at 2784. "The declared purpose of separating and dividing the powers of government, of course, was to 'diffus[e] power the better to secure liberty.'" *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986) (quoting *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring)). Although "the Constitution by no means contemplates total separation of each of these three essential branches of Government," *Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) (per curiam), "[t]he hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *Chadha,* 462 U.S. at 951, 103 S.Ct. at 2784.

The doctrine of separation of powers can be violated in either of two ways:

> One branch may interfere impermissibly with the other's performance of its constitutionally assigned function. Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another.

*Chadha,* 462 U.S. at 963, 103 S.Ct. at 2790 (Powell, J., concurring) (citations omitted). The latter test might be called the "allocation of function" standard while the former could be referred to as the "interference with function" standard.

### III.

In *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Supreme Court considered a separation of powers challenge to the Gramm–Rudman–Hollings Act. It concluded that an executive function could not be allocated to the Comptroller General over whom Congress has the power of removal without violating the principle of separation of powers. *Id.* 106 S.Ct. at 3189. *Bowsher* seems to contemplate a two-step analysis: first, is the

function in question legislative, executive or judicial? second, is the allocation of that function to the branch in question permissible? *Cf. In re Sealed Case,* 838 F.2d 476, 519 (D.C.Cir.) (R. Ginsburg, J., dissenting), *argued,* 56 U.S.L.W. 3747 (U.S. May 3, 1988).

Defendant argues that the power allocated by the Act to the Commission is either legislative or executive, but is in no way judicial. The government claims that the Commission's function is executive because it is responsible for fleshing out the details of a statutory scheme. The commission asserts, however, that it performs a "nonadjudicative" or rulemaking function that is "in aid of, and reasonably related to, the operation of [the judicial] branch." Commission's Brief at 31. In its view, this function is similar to that of the Supreme Court in prescribing the Federal Rules of Civil Procedure pursuant to the Rules Enabling Act.

Several features of the Commission suggest that it is executive in nature. First, as the government contends, the Commission engages in rulemaking in accordance with a statutory mandate, much like an administrative agency does. The Supreme Court explained in *Bowsher* that "[i]nterpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law." 106 S.Ct. at 3192. Second, the President has both appointment and removal power with respect to the Commission members. 28 U.S.C. § 991(a). Finally, at least one of the members, the Attorney General or his designee, is necessarily an executive branch officer. *Id.*

Many of the district courts presented with this issue have concluded that the Commission's function is executive in nature. For example, in *United States v. Arnold,* 678 F.Supp. 1463, 1469 (S.D.Cal. 1988), the court concluded:

> [T]he functions of the Commission—interpreting, monitoring, and enforcing the mandate of the statute as laid out by Congress—appear to fall within the construction of what constitutes an executive function.

Even courts that have upheld the constitutionality of the Act have reached this conclusion. *See, e.g., United States v. Johnson,* 682 F.Supp. 1033 (W.D.Mo.1988); *United States v. Erves,* No. CR87–478A, slip op. at 3 (N.D.Ga. Mar. 22, 1988). After considering the precedent and the factors discussed above, the court finds that the Commission performs an executive function.

The next question is in which branch the Commission belongs. The Act states that the Commission is "established as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). Defendant relies upon this clear language and argues that the Commission is located in the judicial branch. The government urges the court to disregard this statutory language, arguing that the court should look "at what Congress did, not what it said it did." Government's Brief at 9. It argues that since the Commission has an executive function, it should be viewed as within the executive branch. The government relies upon *Bowsher,* in which the Supreme Court found that the Comptroller General was an executive officer even though Congress viewed the position as within the legislative branch. 106 S.Ct. at 3191–92. The Commission argues on the other hand that Congress intended it to be part of the judicial branch because Congress wanted to ensure that sentencing remained a judicial function.

The parties' differing views with regard to the proper branch for the Commission correspond to their differing views as to whether power has been improperly allocated. Defendant argues that the Act impermissibly expands the power of the judiciary by allocating nonjudicial functions (whether legislative or executive) to the judicial branch. The government finds no separation of powers infirmity insofar as it believes that the Commission has executive functions and is located in the executive branch. In its view, the court can disregard the judicial branch label attached to the Commission by Congress. Although the Commission believes that it is located within the judicial branch, it concludes that the Act does not improperly expand the power of that branch. It argues that it is

merely another nonadjudicative body within the judicial branch, like the Judicial Conference or the Advisory Committee on the Federal Rules of Civil Procedure. It claims that rulemaking, such as the promulgation of the guidelines, is not exclusively an executive responsibility.

Article III, section 2 of the Constitution extends the judicial power only to cases and controversies. As a result, federal courts must "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to [them] by the Constitution." *Muskrat v. United States,* 219 U.S. 346, 355, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911) (citation omitted). More specifically, "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the Constitution." *Buckley v. Valeo,* 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976) (per curiam) (citing *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 42 (1852), and *Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792)).

The United States Court of Appeals for the District of Columbia Circuit recently applied these principles in considering a separation of powers challenge to the Ethics in Government Act. *In re Sealed Case,* 838 F.2d 476 (D.C.Cir.), *argued,* 56 U.S.L. W. 3747 (U.S. May 3, 1988). The court found, *inter alia,* that the act impermissibly entrusted the judicial branch with the executive responsibility of appointing and supervising a federal prosecutor known as the "independent counsel." *Id.* at 511. This improper allocation of the executive function, the court found, violated separation of powers principles.

The Sentencing Reform Act similarly entrusts the judicial branch with an executive function—that of promulgating substantive rules in accordance with a statutory mandate. The Commission has a hybrid nature in that judicial and executive officers are appointed to perform executive duties in the judicial branch. The Act's entrustment of executive duties to the judicial branch violates the constitutional principle of separation of powers.

■ The Commission's position that it merely promulgates rules in aid of the judicial function, much like the Supreme Court acts in prescribing the Federal Rules of Civil Procedure, is unpersuasive. As the government itself conceded at the hearing, the sentencing guidelines are substantive rather than procedural. Although federal judges promulgate rules of procedure and have various administrative responsibilities, these are "reasonably ancillary to the primary, dispute-deciding function" of the courts. *Chandler v. Judicial Council of the Tenth Circuit of the United States,* 398 U.S. 74, 111, 90 S.Ct. 1648, 1667, 26 L.Ed.2d 100 (1970) (Harlan, J., concurring) (discussing Judicial Councils). By contrast, the Commission has promulgated substantive guidelines that govern the imposition of punishment for criminal behavior. As the *Arnold* court found, "[t]he Commission's powers and duties differ substantially from other nonadjudicating judicial bodies such as the Judicial Councils, the Judicial Conference, and the Administrative Office which perform the necessary chore of administering the court system." 678 F.Supp. at 1469 n. 7 (citations omitted).[7]

■ Defendant also contends that the Act impermissibly enhances the power of the executive by giving the President the power to remove members from the Commission "for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a). He relies upon *Bowsher*'s holding that Congress cannot retain the power to remove the Comptroller General, an officer the Court found to be in the executive branch, without violating separation of powers principles. 106 S.Ct. at 3192. Because the Commission does not exist in the executive branch, defendant claims that the Presi-

dent's power to remove its members violates the principle of separation of powers.

The Commission finds defendant's reliance upon *Bowsher* to be misplaced. *Bowsher* concerned Congress' power to remove an officer with exclusively executive responsibilities, but the Commission argues that it does not have exclusively judicial responsibilities. It contends that the task of issuing sentencing guidelines is not exclusively judicial in the way that adjudicating cases is. It also asserts that the President can only remove the commissioner status of the judges on the Commission and cannot affect their status as Article III judges. Finally, the Commission claims that the removal provision at issue in *Bowsher* was broader than that involved here, noting that Commission members may be removed only for "good cause." In its view, the language governing removal of Commission members does not indicate control by or subservience to the President. Because the government believes that the Commission is actually within the executive branch, it apparently perceives no problem with the President having the ability to remove executive branch members.

The Supreme Court's concern with "inter-branch interference" in *Bowsher* seems to apply with equal force in the present context. *See United States v. Tolbert,* 682 F.Supp. 1517, 1525 (D.Kan.1988). Just as Congress cannot properly have the power to remove an executive branch official, the President cannot have the power to remove members of "an independent commission in the judicial branch." 28 U.S.C. § 991(a). Even if the Commission were found to be in the executive branch, as the government urges, the President would still have the power to remove Article III judges from a commission. This executive power over

---

7. Commentators have also made this distinction:

> The realities of administration of the modern judiciary preclude any contention that judges are limited to mere "bench-sitting." Judges today promulgate rules of court procedure, assign other judges to hear cases, and perform various internal disciplinary functions....
>
> Rather, the case and controversy requirement and the principle of judicial indepen-

dence it reflects forbids judges from making rules outside the case and controversy context on matters external to the administration of justice or from entering a formal working relationship with members of the other branches of government.

Note, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363, 1377-78 (1987) (footnotes omitted).

the judiciary would therefore still run afoul of the principle of separation of power.

The Commission's effort to distinguish the removal provision here from that in *Bowsher* is unpersuasive. The statute in *Bowsher* allowed removal for, *inter alia,* "inefficiency," "neglect of duty," and "malfeasance." The last two of these are also found in the provision governing removal of Commissioners. The Supreme Court found that "[t]hese terms are very broad and, as interpreted by Congress, could sustain removal of a Comptroller General for any number of actual or perceived transgressions of the legislative will." 106 S.Ct. at 3190. By adding the vague phrase "or for other good cause shown," Congress has provided the President with perhaps an even broader power of removal over the Commissioners. As in *Bowsher,* this removal provision likely renders the Commission "subservient" to the President. *Id.* at 3191.

■ The government argues that the judicial branch designation provision, 28 U.S.C. § 991(a), may be severed, leaving the remainder of the Act intact. In *Alaska Airlines, Inc. v. Brock,* —— U.S. ——, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987), the Supreme Court described the applicable standard for severability:

> The standard for determining the severability of an unconstitutional provision is well established: " 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' "

*Id.* 107 S.Ct. at 1480 (quoting *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (per curiam) (quoting *Champlin Ref. Co. v. Corporation Comm'n,* 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932))).

A review of the legislative history indicates that Congress placed considerable emphasis on the Commission's placement in the judicial branch. The Senate Report accompanying the legislation stated that "[p]lacement of the Commission in the judicial branch is based upon the Committee's strong feeling that, even under this legislation, sentencing should remain primarily a judicial function." S.Rep. No. 225, 98th Cong., 1st Sess. 159 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3342. The Commission itself appears to concur with this assessment of the legislative history.[8] In view of this congressional concern, the court cannot find that Congress would have enacted the remainder of the Act absent the judicial branch designation provision. Moreover, for the court to sever the provision would be effectively to transfer the Commission into the executive branch; service by Article III judges on an executive branch commission may also present separation of powers difficulties. For all of these reasons, the designation provision is not severable.

### IV.

■ Even if the Act could pass the "allocation of function" standard, it would still face a challenge under the "interference with function" standard. This test was described in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977):

> [I]n determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the [affected branch] from accomplishing its constitutionally assigned functions. Only where the potential for disruption is present must we then determine whether that impact is justified by

**8.** The Commission argues that:
Congress wished to underscore that the Commission was to be free from executive or legislative control in exercising its authority to issue sentencing guidelines and policy statements. The Commission's independence of the political branches is implicit in Congress's conclusion that, although each branch should have some influence over the composition of the Commission, in the final analysis

"sentencing should be within the province of the judiciary." [S.Rep. No. 225, 98th Cong., 1st Sess. 54 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3237.] The establishment of the Commission as an "independent commission within the judicial branch" makes that independence explicit and places it on the strongest possible footing.
Commission's Brief at 28.

an overriding need to promote objectives within the constitutional authority of Congress.

*Id.* at 443, 97 S.Ct. at 2790 (citation omitted). In *Nixon*, the Supreme Court rejected a separation of powers challenge to the Presidential Recordings and Materials Preservation Act, finding that it did not disrupt the executive branch from accomplishing its functions.

Defendant argues that the composition provision of the Act, 28 U.S.C. § 991(a), which requires judicial service on the Commission, impairs the function of the judiciary or has the potential for impairing that function. In his view, the judicial service mandated by the Act threatens the impartiality and the independence of the judiciary. Moreover, defendant claims that no overriding need for judges on the Commission exists.

The government and the Commission contend that voluntary judicial service on the Commission does not impair the function of the judiciary. They cite a long history of service by judges in nonjudicial capacities, such as Justice Robert Jackson's role as prosecutor at the Nuremberg trials and Chief Justice Earl Warren's role in presiding over the commission that investigated the assassination of President Kennedy.[9] The Commission also notes that judges regularly serve in nonadjudicative capacities, including service on the Judicial Conference. They both assert that an overriding need existed for judicial presence on the Commission in the promulgation of the guidelines.

Judicial involvement in executive responsibilities may impair the functioning of the judiciary. Judicial service on the President's Commission on Organized Crime was held by the Eleventh Circuit to violate the interference with function standard by threatening the impartiality of the judiciary. *In re Application of the President's Comm'n on Organized Crime (Scaduto),* 763 F.2d 1191, 1197–98 (11th Cir. 1985).[10] In a case recently argued before the Supreme Court, a majority of a District of Columbia Circuit panel determined that judicial involvement in the appointment and supervision of independent counsel prosecutors "undermines the status of the judiciary as a neutral forum for the resolution of disputes between citizens and their government." *In re Sealed Case,* 838 F.2d 476, 516 (D.C.Cir.), *argued,* 56 U.S.L.W. 3747 (U.S. May 3, 1988). The panel concluded that the Ethics in Government Act was unconstitutional because "the [statutory] powers given conflict with those that the Constitution entrusts in [the judiciary]." *Id.* at 517.

Application of the *Nixon v. Administrator* standard requires consideration of the "potential for disruption" and any "overriding need" on a case-by-case basis. Here, the power to promulgate substantive guidelines given to the judges on the Sentencing Commission potentially conflicts and interferes with the performance of the judicial function.[11] Judicial service on the Commission may create conflicts for the judge-commissioners, as well as placing substantial demands on their time.[12] In addition to

**9.** It does not appear that the constitutionality of these activities was ever litigated.

**10.** The Third Circuit arrived at the opposite conclusion in *In re President's Comm'n on Organized Crime (Scarfo),* 783 F.2d 370 (3d Cir.1986). However, the court relied upon the fact that judicial service on that commission was voluntary, expressly distinguishing the situation from that of the Sentencing Commission which is statutorily required to have judicial membership. *Id.* at 376 & n. 3.

**11.** Judicial service on the Sentencing Commission appears to interfere more severely with the judicial function than does judicial service on the "Special Court" that appoints independent counsel. "[U]nlike the Special Court, the judges

on the Sentencing Commission are in continuous contact with the members of the executive branch as they participate in the setting of policy. Moreover, they sit on a policy-making body where they comprise the minority of voting members." *United States v. Estrada,* 680 F.Supp. 1312, 1332 (D.Minn.1988). *See also* note 13 *infra.*

In addition, the President's power to remove Commission members "for neglect of duty or malfeasance in office or for other good cause shown" further threatens the independence of the judge-commissioners.

**12.** Commission members are to serve on a full-time basis for the first six years after the guidelines go into effect, serving in a part-time capacity after that period. 28 U.S.C. § 992(c).

their role in promulgating the guidelines, the judge-commissioners and other judges necessarily become advocates for the guidelines as they administer the program. For example, the judges on the Commission are statutorily required to train other judges in the application of the guidelines. 28 U.S.C. § 995(a)(18).

More fundamentally, the Act interferes with the neutrality of the judiciary in general by creating a permanent, collaborative working relationship between the judicial and executive branches. *United States v. Arnold,* 678 F.Supp. at 1472. At the very least, this intermingling of two branches of government creates the appearance of partiality. This in itself poses a separation of powers difficulty given the importance of the appearance of impartiality to the judicial function. *Id.; see also In re Application of the President's Comm'n on Organized Crime (Scaduto),* 763 F.2d 1191, 1197 (11th Cir.1985) ("Impartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office...."); Note, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363, 1386 (1987) ("[T]he Sentencing Commission effects a permanent collaborative relationship between the judiciary and executive that violates the norm of judicial independence.").

Because the potential for disruption of the judicial function exists, the court must "determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Administrator,* 433 U.S. at 443, 97 S.Ct. at 2790. Having judicial members on the Commission undoubtedly aided its work, but judicial insight could be obtained through other means. There was no overriding need to constitute the Commission in the way it was done. Judicial insight could have been obtained on an advisory basis, through testimony of judges before the Commission or from existing institutions such as the Judicial Conference. Through these means Congress could have obtained judicial views on sentencing reform without placing judges in the position of promulgating guidelines alongside executive branch members.[13] By interfering with the performance of the judicial function without an overriding need for that interference, the Act violates separation of powers principles.

■ The constitutional defect in the composition of the Commission also renders its work product, the guidelines, invalid. It would be impossible to exclude the influence of the judge-commissioners from the guidelines. *Arnold,* 678 F.Supp. at 1472. The government essentially concedes this. Government's Supplemental Memorandum at 13. The guidelines therefore may not constitutionally be applied.[14]

## V.

■ Defendant styles his motion as one to preclude application of the sentencing guidelines. As discussed above, the constitutionally deficient portions of the Act cannot be severed from the remainder of the Act, such as the provision providing for appellate review of sentences. Defendant should therefore be sentenced in accordance with the law that was effective prior to November 1, 1987.

As a matter of policymaking, there is little doubt that the Sentencing Commission was a convenient means by which Congress sought to redress problems in federal sentencing. However, "[c]onvenience and efficiency are not the primary objectives— or the hallmarks—of democratic government...." *INS v. Chadha,* 462 U.S. 919, 944, 103 S.Ct. 2764, 2781, 77 L.Ed.2d 317 (1983). By directing judicial and executive officers to work together in performing an executive function in the judicial branch, the Sentencing Reform Act of 1984 creates a hybrid Commission that cannot survive separation of powers scrutiny. The Act is therefore unconstitutional.

13. The special prosecutor case may also be distinguished on this basis if an overriding need to place an additional check on the executive branch exists there. *See* note 11 *supra.*

14. In view of the court's finding that the designation, removal, and composition provisions, 28 U.S.C. § 991(a), violate the principle of separation of powers, the court need not address defendant's other contentions.

Accordingly, pursuant to the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion to preclude application of the Sentencing Guidelines promulgated by the United States Sentencing Commission is granted, and the Sentencing Guidelines are declared to be unconstitutional.

2. Defendant shall be sentenced as if his criminal conduct occurred prior to November 1, 1987.