**COMMONWEALTH OF MASSACHUSETTS**

v.

**FDIC.**

**Civil Action Nos. 94–10092–RGS, 95–10354–RGS.[1]**

United States District Court, D. Massachusetts.

Feb. 13, 1996.

---

1. On November 11, 1996, this case was consolidated with the earlier filed lawsuit, No. 94–10092. Because the Fifth Amended Complaint presently before the court embraces all of the claims asserted in both cases, this opinion will be filed under both civil action numbers.

Thomas O. Bean, Thomas A. Barnico, Attorney General's Office, Boston, MA, Thomas M. Alpert, Office of Attorney General, Public Protection Bureau, Boston, MA, for plaintiff.

Z. Scott Birdwell, Corporation and Special Litigation Section F.D.I.C., Washington, DC, Charles L. Cope, II, Scott Birdwell, Federal Deposit Insurance Corporation, Washington, DC, Clark van der Velde, Federal Deposit Insurance Corporation, Boston, MA, for defendant.

*MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

*BACKGROUND*

The Commonwealth of Massachusetts (Commonwealth) brought this lawsuit against the FDIC in both its corporate and receivership capacities, seeking unclaimed deposits held by thirty-five failed Massachusetts banks.[2] The Commonwealth bases its claims against the FDIC on a state law, the Massachusetts Abandoned Property Act, G.L. c.

---

**2.** The Commonwealth originally brought claims involving thirty-seven banks in receivership which were grouped in the Amended Complaint into five categories, labeled Groups A through E. The Commonwealth acknowledges that two of the banks were inadvertently named.

200A (MAPA). MAPA directs the State Treasurer to take possession of any bank deposit account in which the owner has shown no interest for three years. The Treasurer may proceed either in the name of the absent depositor or in the Commonwealth's own right. In this lawsuit the Commonwealth is asking for the insurance value of the abandoned deposits from FDIC–Corporate (Counts I–IV) or, in the alternative, the uninsured (pro rata) value of the same deposits from FDIC–Receiver (Counts V–IX). The Fifth Amended Complaint seeks deposits that MAPA deemed abandoned both prior to (the Pre–Closing Deposits) and after the institution of the receiverships (the Post–Closing Deposits). The receiverships were declared between 1990 and 1993.

On January 18, 1994, the Commonwealth filed a Complaint in this court against FDIC–Receiver. On March 24, 1994, the Commonwealth formally filed its claim with FDIC–Corporate.[3] On April 20, 1994, the FDIC rejected the Commonwealth's claim in a two paragraph letter stating that MAPA is preempted by the Federal Deposit Insurance Act, 12 U.S.C. § 1822(e). The Commonwealth appealed directly to the First Circuit Court of Appeals, asserting jurisdiction under 12 U.S.C. § 1821(f)(3) & (4).[4]

On review, the First Circuit explained the two avenues by which an appeal of an adverse decision by the FDIC can be taken.

First, the FDIC can resolve disputes itself by adopting regulations for resolving such claims.[5] Section 1821(f)(3)(A). If it does so, then under section 1821(f)(4) the dissatisfied claimant can obtain direct court of appeals review of the FDIC's 'final determination' pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Second, if 'the Corporation has not prescribed regulations' for resolving such claims, the FDIC 'may require the final determination of a court of competent jurisdiction before resolving such claims.' Section 1821(f)(3)(B).

The phrase 'court of competent jurisdiction' assuredly refers to a federal district court or, absent exclusivity or removal, a state trial court.... Against this background, we think that in section 1821(f) Congress deliberately set forth two alternative methods of resolving deposit and insurance claims, and made the course to be followed depend on whether the FDIC has established regulations for the adjudication of such claims. If it has, the agency decides the factual disputes and there is direct court of appeals review; if it has not, then the agency's less formal resolution is subject to scrutiny in an action brought is a trial court of competent jurisdiction, which will normally be the federal district court.

True, the statute's language is not airtight. The direct route to the court of appeals is available, as the statute phrases the matter, when there is a '[f]inal determination' by the FDIC. In the abstract, the quoted phrase could refer either to a determination made under FDIC regulations as provided in section 1821(f)(3)(A) or could include far less formal resolutions, such as the letter at issue in this case. But, in context, the latter is surely a less plausible reading of the words....

*Massachusetts v. FDIC,* 47 F.3d 456, 458 (1st Cir.1995) (footnote omitted). The Court of Appeals then transferred the case to the district court for a ruling on the merits. In doing so, the Court specifically stated that it had "not considered whether the FDIC's determinations here are 'final' to the extent required for judicial intervention or any other such question." *Id.* at 460.[6]

---

3. On May 5, 1992, the parties entered a standstill agreement tolling the limitations on the periods for filing claims. The FDIC revoked the agreement on July 21, 1993, effective August 24, 1993.

4. Section 1821(f)(4) provides that "[f]inal determinations made by the Corporation shall be reviewable in ... the court of appeals."

5. The parties agree that the FDIC has never adopted such regulations.

6. The First Circuit has recently made clear that to the extent that *Massachusetts v. FDIC* relies on *Callejo v. RTC,* 17 F.3d 1497 (D.C.Cir.1994), it does so only with respect to *Callejo's* jurisdictional holding. More particularly, the First Circuit did not adopt *Callejo's* de novo standard of district court review of FDIC determinations of disputed insurance claims. *Villafane–Neriz v. FDIC,* 75 F.3d 727, —— (1st Cir.1996).

FDIC–Corporate brought a motion to dismiss in the district court reasserting its position that MAPA is preempted by 12 U.S.C. § 1822(e). FDIC–Corporate also moved in the alternative for summary judgment arguing that its denial of the Commonwealth's claim was a proper exercise of discretion. Simultaneously, FDIC–Receiver filed a motion to dismiss the counts against it. The Commonwealth responded with a cross motion for summary judgment against FDIC–Corporate. In its reply to FDIC–Receiver's motion to dismiss, the Commonwealth concedes that it is not entitled to Post–Closing Deposits.[7] The Commonwealth, however, opposes the motion to dismiss its claims to the Pre–Closing Deposits held in the Group A through D Receivership Banks (Counts V and VIII).[8]

## THE STATUTES

### The Massachusetts Abandoned Property Act

Section 7 of MAPA requires that holders of deposits submit an annual report to the State Treasurer listing any property deemed abandoned by section 3,[9] together with the name and address of the depositor. If the amount of the deposit is one hundred dollars or more, the holder must send the owner, within sixty days of the filing of the report, notice that the deposit is to be surrendered to the custody of the Commonwealth. G.L. c. 200A, § 7(A).

If the deposit remains unclaimed, the holder is required to deliver it to the State Treasurer who must then publish notice that the account has been declared abandoned. *Id.*, §§ 8 & 8(A). Unclaimed deposits are placed in an Abandoned Property Fund for the Commonwealth's use. *Id.*, § 9. The owner of the account may thereafter at any time submit a claim to the State Treasurer. If the Treasurer determines the claim to be valid, he or she must pay the owner the value of the deposit plus interest. *Id.*, § 10.

### The Federal Deposit Insurance Act

The FDIC operates in dual capacities. FDIC–Corporate acts as the regulator of financial institutions and as the insurer of deposits. 12 U.S.C. § 1821(a) & (c). Upon the default of a depository institution, FDIC–Receiver assumes responsibility for winding up the bank's affairs, collecting outstanding obligations, liquidating the bank's remaining assets, and distributing any resulting surplus to the failed institution's creditors and shareholders. 12 U.S.C. § 1821(c) & (d)(2). In its role as an insurer, FDIC–Corporate draws monies from the Bank Insurance Fund or the Savings Association Insurance Fund and either directly reimburses insured depositors or, if it is more cost effective, arranges the transfer of insured accounts to a solvent purchasing bank. 12 U.S.C. § 1821(f). Upon paying an insured depositor, FDIC–Corporate is subrogated to the depositor's rights against FDIC–Receiver. 12 U.S.C. § 1821(g). FDIC–Corporate may then bring a claim against FDIC–Receiver for the depositor's share of the pro rata distribution of any liquidated assets. 12 U.S.C. § 1821(g)(2).

Section 1822(e) of the Federal Deposit Insurance Act defines FDIC–Corporate's obligations with respect to unclaimed insured deposits. Before June 1993, section 1822(e) provided that:

> [i]f, after the Corporation shall have given at least three months' notice to the depositor by mailing a copy thereof to his last-known address appearing on the records of the depository institution in default, any depositor in the depository institution in default shall fail to claim his insured deposit from the Corporation within eighteen months after the appointment of the receiver for the depository institution in default, or shall fail within such period to

---

**7.** The Commonwealth also concedes that even by its interpretation, the claim for abandoned deposits held by the Group E Banks was untimely.

**8.** The Commonwealth also agrees to waive Counts VII and IX, which are plead in the alternative to Count VIII, so long as Count VIII survives dismissal.

**9.** Section 3 creates a presumption that all deposits listed in the reports are abandoned "unless the owner has, within three years next preceding the date ... [that] the reports are required," communicated with the holder or engaged in some activity regarding the deposit.

claim or arrange to continue the transferred deposit with the new bank or with the other insured depository institution which assumes liability therefor, all rights of the depositor against the Corporation with respect to the insured deposit, and against the new bank and such other insured depository institution with respect to the transferred deposit, shall be barred, and all rights of the depositor against the depository institution in default and its shareholders, or the receivership estate to which the Corporation may have become subrogated, shall thereupon revert to the depositor. The amount of any transferred deposits not claimed within such eighteen months' period, shall be refunded to the Corporation.

Until 1988, the FDIC's practice was to honor claims by States to a failed bank's abandoned deposits. In late 1988, the FDIC reversed itself, relying on the last line of then section 1822(e), that "[t]he amount of any transferred deposits not claimed within such eighteen months' period, shall be refunded to the Corporation."

On June 28, 1993, the Unclaimed Deposits Amendments Act of 1993 (UDAA) (1993 Pub.L. No. 103–44) was enacted into law. The UDAA now requires that deposits not claimed within eighteen months of the appointment of FDIC–Receiver be placed in a State's custody for ten years. During this ten year period, the State is mandated to search for the depositor. If, at the end of ten years, the depositor is not found, the account reverts to the FDIC, and all claims regarding the deposit are extinguished. The provisions of the UDAA were made prospective, except that section 2(a) of Public Law 103–44, applied the pre-enactment version of section 1822(e) to banks placed in receivership between January 1, 1989 and June 28, 1993.[10] All of the deposits at issue in this case were held by banks subject to the pre-June 1993 version of section 1822(e).[11]

---

**10.** Section 2(a) also provides that an insured depositor in a bank that failed in the 1989–1993 period may make a claim against FDIC–Corporate at any time prior to the termination of the receivership.

## CLAIMS AGAINST FDIC–CORPORATE

■ The main thrust of FDIC–Corporate's motion to dismiss is that MAPA is pre-empted by section 1822(e). This is so, FDIC–Corporate argues, because the statute specifically directs that any unclaimed deposit be refunded to FDIC–Corporate. Compliance with both the federal and the state laws, FDIC–Corporate contends, would result in an impossibility because the same money cannot go simultaneously into two different pockets.

"The Supremacy Clause ... of the Constitution provides Congress with the power to pre-empt state law." *Louisiana Public Service Commission v. F.C.C.*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). In enacting a federal statute, pre-emption occurs:

when Congress ... expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying the entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

476 U.S. at 368–369 (citations omitted).

FDIC–Corporate argues that MAPA is pre-empted by every test of *Louisiana Public Service Commission*. While the provision that "[t]he amount of any transferred deposits not claimed within such eighteen months' period, shall be refunded to the Corporation," might be lacking as a "clear expression" of a Congressional intent to pre-empt state law, see *Resolution Trust Corp. v. State of California*, 851 F.Supp. 1453, 1458 (C.D.Cal.1994), I otherwise agree with FDIC–Corporate's analysis.

---

**11.** After June 28, 1993, abandoned deposits clearly revert to the FDIC under the UDAA and, accordingly, the Commonwealth makes no claim to these deposits.

Congress created the FDIC to assure small depositors (those with accounts of less than $100,000) that their "hard earnings" could be safely entrusted to the national banking system. See *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 432–433, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428 (1986). Consistent with the purpose of FDIC insurance, these same depositors receive special consideration when it comes to prosecuting a claim. The version of section 1822(e) applicable to this dispute permits a depositor up to eighteen months to file a claim for deposit insurance. Only if the depositor fails to act is the FDIC's insurance obligation extinguished,[12] and the value of the deposit refunded to the FDIC.[13]

■ The Commonwealth argues that there is no conflict between section 1822(e) and MAPA because an abandoned deposit is not "unclaimed" once the Commonwealth asserts an interest. This, however, begs the question, because the only interest the Commonwealth can assert is the one that it claims for itself under MAPA. While it is true that when a bank is functioning normally, the ownership of an abandoned deposit is decided primarily by reference to state law, *Anderson National Bank v. Luckett,* 321

U.S. 233, 240, 64 S.Ct. 599, 603, 88 L.Ed. 692 (1944), once a bank fails the right to an account is a question of federal law. *North American Fund Management Corp. v. FDIC,* 991 F.2d 873, 877 (D.C.Cir.1993).

This is so because of the Federal Deposit Insurance Act itself. An abandoned account in a failed bank would have no value (other than an unsecured entitlement to a pro rata share of the bank's remaining assets) but for the fact of FDIC insurance. This insurance is intended to provide comfort to small depositors; it is not intended as an inducement to States that have nothing to do with the decision to deposit the funds in the first place. FDIC insurance comes at a cost. Banks pay premiums in order to hold themselves out as federally insured; depositors contribute indirectly to the cost of these premiums by accepting less interest in return for added safety. States, on the other hand, contribute nothing to the FDIC's insurance pool, and thus have no legitimate claim to its assets. To the extent that MAPA attempts to legislate a different result, I conclude that it impermissibly encroaches upon the workings of the Federal Deposit Insurance Act and is therefore pre-empted.[14]

12. The depositor may still, however, file a claim against FDIC–Receiver as an *unsecured* creditor. After June, 1993, section 1822(e) as amended gives a depositor an additional ten years to claim a refund from the State custodian. Prior to the enactment of the UDAA, there was theoretically no limit to the time in which a depositor could file a claim pursuant to MAPA. That assumes, of course, that the State had a right under federal law to take custody of the account in the first place.

13. This is not true in a literal sense, although section 1822(e) speaks of a "refund" to the FDIC. If the account remains unclaimed, the FDIC does not come into new money. It is merely absolved of its insurance obligation, thus discharging the encumbrance on the FDIC's insurance funds. The Commonwealth, on the other hand, is seeking a payout of "new" money from the FDIC's insurance pool. The UDAA was passed by Congress in 1993 at a time when the FDIC's insurance funds were themselves on the verge of bankruptcy. It is inconceivable that Congress, in deciding to apply the pre–1993 version of section 1822(e) to banks that failed between 1989 and 1993, would have intended a result that would have further imperiled the FDIC's parlous actuarial health.

14. Apart from the conflict between the actual disposition of the reverted accounts, there is an inconsistency between the notice requirements of MAPA and the Federal Deposit Insurance Act. Section 1822(e) requires FDIC–Corporate to mail a notice regarding any unclaimed deposit, whatever its amount, fifteen months after the failure of the bank, to the last known address of the depositor. The notice is intended to warn the account owner that his or her right to deposit insurance will expire within ninety days. MAPA would place the additional requirements on FDIC–Corporate that it submit a report to the State Treasurer describing property deemed abandoned under MAPA, and notify the owner of any account larger than one hundred dollars within sixty days of the report. G.L. c. 200A, § 7(A).

Moreover, state and federal law conflict over the time frame in which a depositor may claim an abandoned deposit. Either version of section 1822(e) eventually extinguishes a depositor's right to an unclaimed deposit, while MAPA extends the right of a depositor to make a claim in perpetuity. G.L. c. 200A § 10.

■ The conclusion that MAPA is pre-empted by section 1822(e) does not, however, dispose of the Commonwealth's alternative argument that its right to act on behalf of the depositor is recognized by federal law. The Commonwealth points to the fact that FDIC regulations allow deposits to be insured in the name of an agent or fiduciary. Putting aside the issue whether an agency can be created by the unilateral declaration of the agent, the fundamental problem with the Commonwealth's argument is the fact that these same regulations require that any such third party relationship appear on the records of the bank. 12 C.F.R. §§ 330.6, 330.4. The Commonwealth responds that the files of the failed banks must have contained a copy of MAPA, and that this ought to satisfy the record requirement. The regulations, however, state that "[n]o claim for insurance coverage based on a fiduciary relationship will be recognized if no fiduciary relationship is evident from the *deposit account records* [emphasis added] of the insured depository institution." 12 C.F.R. § 330.4(a)(2) & (b).

This is so because the FDIC, when in stepping in to rescue the affairs of a failed bank, often must make instant determinations. *Timberland Design, Inc. v. First Serv. Bank for Savings*, 932 F.2d 46, 48 (1st Cir.1991). There is "a well-grounded history of permitting the FDIC to rely exclusively on the books and records of an insolvent institution in effectuating the takeover of banks and in making the many deposit insurance determinations which are necessary to that task." *Raine v. Reed*, 14 F.3d 280, 283 (5th Cir. 1994). To require the FDIC "to look further afield" and track down potential liability that might exist because of an undisclosed legal relationship extrapolated from a State law would corrode the FDIC's core mission.[15] *Villafane–Neriz*, supra, 75 F.3d at —.

FDIC–Corporate, in the alternative, seeks a ruling affirming its denial of the Commonwealth's claims. The parties have briefed at length the issue discussed by the Court of Appeals, whether the FDIC's denial of the Commonwealth's claim was a "final" determination and if so, whether it is entitled to deference on review.[16] In that I have ruled MAPA pre-empted, this issue is moot. FDIC–Corporate's motion to dismiss will instead be allowed.

### CLAIMS AGAINST FDIC–RECEIVER

■ FDIC–Receiver argues that the claims brought against it for Pre–Closing Deposits are barred because of the Commonwealth's failure to file a timely proof of claim. In addressing FDIC–Receiver's motion to dismiss, both FDIC–Receiver and the Commonwealth have asked that I consider material outside the pleadings. Consequently, the motion to dismiss will treated as one for summary judgment, as the parties apparently intend. Fed.R.Civ.P. 12(c).

Section 1821(d)(3) of the Federal Deposit Insurance Act requires that a creditor of a failed bank file a proof of claim within ninety days of notice of the institution of receivership. If the claim is not timely filed, it is barred, and the creditor loses any entitlement to a pro rata share of the bank's remaining assets. 12 U.S.C. § 1821(d)(5)(C)(i). Under the version of section 1822(e) applicable in this case, an insured depositor is treated more generously than an ordinary credi-

---

**15.** An account is deemed abandoned under MAPA when it has remained inactive for three years and comes into the custody of the Commonwealth sixty days thereafter. Under the Federal Deposit Insurance Act, an account is deemed abandoned only when an insurance claim is not made within eighteen months of a bank's failure, however long the account has previously lain dormant. Because of the difference, the FDIC would have no means of estimating its liability to the Commonwealth under MAPA from the bank's books and records even if it assumed that a fiduciary trust had been impressed upon any account that was then three years dormant or might become so during the next eighteen months. Moreover, given the fact that each State has a different abandoned property statute, and that many banks serve interstate customers, the FDIC's ability to accurately assess the worth of a failed bank would be severely compromised if it had to calculate the competing interests of several States seeking to claim deposits.

**16.** The parties briefs were submitted before the Court of Appeals opinion in *Villafane–Neriz*, supra, was issued.

tor.[17] The depositor is given eighteen months or until the termination of the receivership to file an insurance claim with FDIC–Corporate.

The Commonwealth did not file its claims for Pre–Closing Deposits before the eighteen month period granted to a depositor expired, but did file within the ninety day period that followed.[18] FDIC–Receiver argues that the Commonwealth's claim should have been filed within the ninety day period granted to an ordinary creditor of a bank. Because the Commonwealth's filing by this standard was untimely, FDIC–Receiver contends that this court lacks jurisdiction under 12 U.S.C. § 1821(d)(5)(C)(i) and (13)(D) to consider the Commonwealth's claim. The Commonwealth argues that its claim is not time barred because as the depositor's surrogate it accedes to the rights of the depositor under section 1822(e).

This might be true only if the Commonwealth stands in the shoes of the depositor. For the reasons previously discussed, the Commonwealth cannot claim such footing under federal law, nor can it by operation of a pre-empted state statute. The Commonwealth was required on seasonable notice of the receivership, as were all other ordinary creditors, to file a claim within ninety days. It did not, and thus forfeited both its claim and any right to consideration by the court of the merits of its dispute with the FDIC.

The Commonwealth finally argues that FDIC–Receiver by its past conduct has waived any right to object to the late filing. The Commonwealth contends that FDIC–Receiver previously allowed an apparently untimely 1.8 million dollar claim by the Commonwealth for Pre–Closing Deposits held in the failed Bank of New England. The Commonwealth, however, ignores the express language of section 1821(d)(13)(D) which states that "[e]xcept as otherwise provided in *this subsection*, no court shall have jurisdiction over ... any ... action for payment from ... the assets of any depository institution for which the [FDIC] has been appointed receiver." (Emphasis added). Because section 1822(e) is not incorporated in subsection (d) of section 1821, it does not enlarge the period for the filing of a timely claim. FDIC–Receiver cannot by its past practice create jurisdiction where the Act plainly forbids it.

### ORDER

For the foregoing reasons, FDIC–Corporate's Motion to Dismiss is *ALLOWED* and its Motion for Summary Judgment is declared *MOOT*. The Commonwealth's Cross Motion for Summary Judgment is *DENIED*. FDIC–Receiver's Motion to Dismiss is *ALLOWED*.

SO ORDERED.

---

**17.** Again, this is so because the purpose of the Federal Deposit Insurance Act is to assure small depositors that their "hard earnings" are safe in the national banking system. There is no corresponding federal interest in assuring States that their claims to deposits abandoned by these same depositors are similarly protected.

**18.** The May 5, 1992, standstill agreement has no significance as the ninety day bar date applicable to ordinary creditors had in all cases expired before the standstill agreement was entered.