USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1548 COMMONWEALTH OF MASSACHUSETTS, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION  and FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Bank Five for Savings, et al., Defendants, Appellees. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on December 19, 1996, is amended as follows: On page 2, third line from the bottom, the citation to 1821(a)(2)(B)(5), (6) should read 1821(a)(5), (6). United States Court of Appeals For the First Circuit ____________________ No. 96-1548 COMMONWEALTH OF MASSACHUSETTS, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION  and FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Bank Five for Savings, et al., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Lynch, Circuit Judges. ______________ ______________ Thomas O. Bean, Assistant Attorney General, with whom Scott ______________ ___________________________ _____ Harshbarger, Attorney General of Massachusetts, was on brief, for ___________ _________________________________ appellant. Mitchell E.F. Plave, Counsel, with whom Ann S. DuRoss, _____________________ _______ ______________ Assistant General Counsel, and Colleen B. Bombardier, Senior __________________________ _______________________ ______ Counsel, were on brief for appellee FDIC, in its corporate _______ capacity. Leslie Randolph, Counsel, with whom Ann S. DuRoss, Assistant _______________ _______ _____________ _________ General Counsel, and Robert D. McGillicuddy, Senior Counsel, were _______________ ______________________ ______________ on brief for appellee FDIC, as Receiver for Bank Five for Savings, et al. ____________________ December 19, 1996 ____________________ LYNCH, Circuit Judge. Against the backdrop of a LYNCH, Circuit Judge. ______________ general economic decline and tightened federal bank regulations, Massachusetts suffered forty-eight bank failures between 1987 and 1994. This case is part of the aftermath of that financial crisis. At issue is whether the Commonwealth of Massachusetts, acting under its abandoned property statute, may obtain either the federal deposit insurance proceeds or the pro rata distributions from abandoned accounts in failed Massachusetts banks. Considerable sums are at stake. I. The Federal Deposit Insurance Corporation was created by the Banking Act of 1933, Pub. L. No. 73-66, 8, 48 Stat. 162, to alleviate hardships caused by bank failures. See S. Rep. No. 584, 72d Cong., 1st Sess. 10 (1932).1 The ___ agency in its corporate capacity ("FDIC-Corporate") offers insurance on depositors' accounts for up to $100,000. 12 U.S.C. 1821(a)(1)(B). Participating banks and thrifts pay premiums to the FDIC. Those premiums are used to maintain two insurance funds, the Bank Insurance Fund and the Savings Association Insurance Fund. Id. 1821(a)(5), (6). When a ___  ____________________ 1. The Banking Act of 1933 amended the Federal Reserve Act, Pub. L. No. 63-43, 38 Stat. 251 (1913). Congress revisited the deposit insurance provisions in 1935, and again in 1950, when these provisions were amended and made part of the Federal Deposit Insurance Act ("FDIA"), Pub. L. No. 81-97,  2(1), 64 Stat. 873. -2- 2 bank fails, FDIC-Corporate draws money from one of these funds and either pays the insurance proceeds directly to depositors as an insured deposit or transfers the money to a new bank as a transferred deposit, using whichever method is more cost effective. Id. 1821(f). Upon payment to the ___ depositors, FDIC-Corporate becomes subrogated to the depositors' rights against the failed banks. Id.  ___ 1821(g)(1). The FDIC acting as a receiver ("FDIC-Receiver") winds up the affairs of failed banks and distributes any remaining assets pro rata to the bank's creditors. Id.  ___ 1821(c)(2)(A)(ii); 1821(d)(11)(A). FDIC-Corporate may bring a claim against FDIC-Receiver for the insured depositors' pro rata shares of any distributed liquidated assets. See id. ___ ___ 1821(g)(1). Before 1988, FDIC-Corporate had generally honored claims by states, pursuant to their abandoned property acts, for the insured value of abandoned deposits at failed banks.2 Treatment of Abandoned Deposits and Property in Failed _____________________________________________________________ Depository Institutions: Hearing Before the Subcomm. on _____________________________________________________________ Financial Institutions Supervision, Regulation and Insurance _____________________________________________________________ of the House Comm. on Banking, Finance and Urban Affairs, ____________________________________________________________  ____________________ 2. "States as sovereigns may take custody of or assume title to abandoned personal property as bona vacantia, a process commonly (though somewhat erroneously) called escheat." Delaware v. New York, 507 U.S. 490, 497 (1993). All 50 ________ ________ states have statutes providing for such "escheat." -3- 3 102d Cong., 2d Sess. 149 (1992) (Letter of Alice C. Goodman, Acting Director, Office of Legislative Affairs, FDIC). FDIC- Receiver continues to permit states that file timely claims pursuant to the provisions governing general creditors of the receivership estate to act on behalf of absent depositors and to claim those depositors' pro rata shares of any distributed liquidated assets. Id. at 95 (Testimony of Alfred J.T. ___ Byrne, General Counsel, FDIC). However, after 1988, FDIC- Corporate began declining to pay states the insured value of abandoned accounts. Id. at 97-98. FDIC-Corporate asserted ___ that its original policy was inconsistent with the plain language of the pre-1993 version of 12 U.S.C. 1822(e), which provided that insurance funds not claimed by a depositor within eighteen months of the appointment of a receiver reverted back to the FDIC. Id; see also 12 U.S.C.  __ ___ ____ 1822(e) (1989) (current version enacted 1993). The states, with Massachusetts in the vanguard, fought back. They lobbied Congress, leading to the enactment of compromise legislation, the Unclaimed Deposits Amendments Act of 1993 ("UDAA"), Pub. L. No. 103-44, 107 Stat. 220 (1993), under which the states receive the insured value of abandoned deposits for a 10-year period. If a depositor fails to make a claim during this time, the insurance proceeds on the abandoned account must be returned to the -4- 4 FDIC and all rights of the depositor are extinguished. 12 U.S.C. 1822(e)(5); see infra note 7. ___ _____ However, the UDAA expressly made the former version of 1822(e) applicable to banks placed in receivership between January 1, 1989 and June 28, 1993, with one additional proviso. Claims by insured depositors at such banks made prior to the termination of the receivership estate are not time-barred. Pub. L. No. 103-44, 2(b) (1993). Thus, depositors at banks placed in receivership between January 1, 1989 and June 28, 1993 have the longer of eighteen months or until the termination of the receivership estate to file claims with FDIC-Corporate for the insured value of their accounts. Id. ___ Massachusetts also turned to the federal judicial system for redress, claiming it is entitled to the insurance proceeds and the pro rata distributions from abandoned deposits in thirty-three failed Massachusetts banks for which the FDIC was appointed receiver between May 1990 and December 1992.3 II. The Commonwealth has its own comprehensive legal framework, the Massachusetts Abandoned Property Act ("MAPA"), Mass. Gen. L. ch. 200A, for dealing with abandoned  ____________________ 3. At least one similar suit, Resolution Trust Corp. v. _______________________ California, 851 F. Supp. 1453 (C.D. Cal. 1994), has also been __________ brought in federal court. -5- 5 property. The federal government has a similarly intricate statutory and regulatory scheme relating to bank failures. The dispute between the Commonwealth and the FDIC involves the intersection of these two bodies of law. The MAPA was enacted both to protect the rights of true owners when and if they appear and to bring additional revenues to the Commonwealth's treasury. Treasurer & ____________ Receiver Gen. v. John Hancock Mut. Life Ins. Co., 446 N.E.2d ______________ _______________________________ 1376, 1383 (Mass. 1983). It creates a presumption that deposits are abandoned unless the owner has, during the past three years, either communicated with the deposit holder or engaged in certain other activities. Mass. Gen. L. ch. 200A, 3. Deposit holders, including banks, are required to submit annual reports to the State Treasurer listing the names and addresses of depositors deemed to have abandoned accounts valued at more than $100. Id. 7. The banks must ___ send letters to the owners of such accounts at least sixty days before filing the report, giving notice that the deposits are about to be surrendered to the custody of the Commonwealth. Id. 7(A). ___ Unless a depositor claims an abandoned account, the bank must deliver the funds into the custody of the State Treasurer, who publishes a notice that the accounts are deemed abandoned. Id. 8A, 8. The money is then placed in ___ an Abandoned Property Fund and used for the benefit of the -6- 6 Commonwealth. Id. 9(e). The owner of an abandoned account ___ has an unlimited period to submit a claim for the funds. Id. ___ 10(a). If the State Treasurer determines that the claim is valid, the owner receives the value of the account plus a small amount of monthly interest.4 Id. 10(e). However, ___ only about 25% of abandoned accounts are ever claimed; the rest are retained by the Commonwealth. The dispute over deposits held in failed banks and deemed abandoned under the MAPA arose in early 1992.5 Following unsuccessful attempts to achieve a settlement, Massachusetts filed a complaint against FDIC-Receiver in federal district court in January 1994 seeking the pro rata value of the deposits from the failed banks' remaining assets. In March 1994, Massachusetts also filed an administrative claim with FDIC-Corporate for the insured value of the unclaimed deposits, arguing that it was entitled to these funds under the MAPA.6  ____________________ 4. This interest cannot exceed five-twelfths of one percent per month. Id. ___ 5. This dispute initially involved both pre-closing deposits, deposits abandoned before the banks were put into receivership, and post-closing deposits, deposits abandoned after the banks were put into receivership. However, Massachusetts has since conceded that it is not entitled to the post-closing deposits, Massachusetts v. FDIC, 916 F. _____________ ____ Supp. 54, 57 (D. Mass. 1996), and so the term "deposits" here refers to pre-closing deposits only. 6. The Commonwealth is not attempting to recover the same money twice: it only seeks the uninsured value of the pre- closing deposits from FDIC-Receiver to the extent that it -7- 7 FDIC-Corporate rejected the claim, stating that the MAPA was pre-empted by 12 U.S.C. 1822(e) (1989) (current version enacted 1993).7 Massachusetts petitioned this court directly for review of the administrative claim. This court  ____________________ does not recover the insured value of these deposits from FDIC-Corporate. 7. The pre-amendment version, the operative text here, stated: (e) Unclaimed deposits. If, after __________________ the Corporation shall have given at least three months' notice to the depositor by mailing a copy thereof to his last-known address appearing on the records of the depository institution in default, any depositor in the depository institution in default shall fail to claim his insured deposit from the Corporation within eighteen months after the appointment of the receiver for the depository institution in default, or shall fail within such period to claim or arrange to continue the transferred deposit with the new bank or with the other insured depository institution which assumes liability therefor, all rights of the depositor against the Corporation with respect to the insured deposit, and against the new bank and such other insured depository institution with respect to the transferred deposit, shall be barred, and all rights of the depositor against the depository institution in default and its shareholders, or the receivership estate to which the Corporation may have become subrogated, shall thereupon revert to the depositor. The amount of any transferred deposits not claimed within such eighteen months' period, shall be refunded to the Corporation. 12 U.S.C. 1822(e) (1989) (amended 1993). -8- 8 held that it lacked jurisdiction and transferred the case to the district court for a ruling on the merits. Massachusetts _____________ v. FDIC, 47 F.3d 456, 457 (1st Cir. 1995) (initial ____ jurisdiction to hear appeals from the FDIC's disposition of claims for insurance benefits lies not in the court of appeals, but in the district court). The cases against FDIC- Corporate and FDIC-Receiver were consolidated in October 1995 by agreement of the parties. FDIC-Corporate moved to dismiss, reasserting that the MAPA is pre-empted by federal statute. FDIC-Corporate moved in the alternative for summary judgment, arguing that its decision to deny Massachusetts' claim was a proper exercise of discretion. At the same time, FDIC-Receiver moved to dismiss on the ground that Massachusetts' claim for deposit funds was time-barred because it had not been filed within the 90-day period for general creditors set forth in 12 U.S.C. 1821(d)(5). Massachusetts responded with a motion for summary judgment against FDIC-Corporate. Massachusetts v. FDIC, 916 F. Supp. at 57. _____________ ____ The district court, in a carefully reasoned opinion, dismissed the insurance claim against FDIC-Corporate and entered summary judgment for FDIC-Receiver on the creditor claim. Id. at 61.8 The allowance of both motions ___  ____________________ 8. FDIC-Receiver's motion to dismiss was treated as a motion for summary judgment, because the parties asked that materials outside the pleadings be considered. Id. at 60 ___ -9- 9 is reviewed de novo. Villafane-Neriz v. FDIC, 75 F.3d 727, __ ____ _______________ ____ 730 (1st Cir. 1996); Heno v. FDIC, 20 F.3d 1204, 1205 (1st ____ ____ Cir. 1994). We affirm. III. The Commonwealth argues two bases for its claim against FDIC-Corporate for the insured value of deposits abandoned in failed Massachusetts banks: its abandoned property statute and FDIC regulations. The claim raises certain issues. The first is how properly to interpret the relevant version of 12 U.S.C. 1822(e). The second is whether this federal statute pre-empts the MAPA. If it does, the question becomes whether the Commonwealth is nonetheless entitled to the insurance proceeds under any other provision of federal law. A. Statutory Construction _________________________ The Supreme Court has instructed that the first task in statutory construction is to separate "the question of the substantive (as opposed to pre-emptive) meaning of a statute [from] the question of whether a statute is pre- emptive." Smiley v. Citibank, 116 S. Ct. 1730, 1735 (1996). ______ ________ FDIC-Corporate's primary argument is that the applicable version of 1822(e) reflects a clear congressional intent that insurance proceeds for abandoned accounts revert to one of the FDIC insurance funds. FDIC-Corporate also asserts  ____________________ (citing Fed. R. Civ. P. 12(c)). -10- 10 that its interpretation of the statute is entitled to deference under Chevron v. Natural Resources Defense Council, _______ __________________________________ Inc., 467 U.S. 837 (1984). ____ The Commonwealth counters that 1822(e) can hardly be read as demonstrating a clear congressional intent that the insurance recoveries referable to abandoned accounts revert to the FDIC when the agency itself applied a contrary interpretation between 1950 and 1988. Massachusetts further argues that, in this context, the new FDIC interpretation is not entitled to full Chevron deference. FDIC-Corporate _______ concedes that before 1988 it did not consistently require deposit insurance on abandoned accounts to be returned to the federal government rather than turned over to the states.9 It asserts, however, that, when the inconsistency was brought to its attention in late 1988, it determined that 1822(e) required these funds to revert to the FDIC. Hearing, supra, _______ _____ at 97-98 (Testimony of Alfred J.T. Byrne, General Counsel, FDIC).  ____________________ 9. This inconsistency may have resulted from the FDIC's use of three different responses to bank failures, one of which was known as a purchase and assumption transaction and did not involve either insured deposits or transferred deposits, and thus did not implicate 1822(e). In mid-1989, the FDIC modified the structure of its purchase and assumption transactions so that they made use of transferred deposits, thus eliminating this source of confusion. Hearing, supra, _______ _____ at 97-98 (Testimony of Alfred J.T. Byrne, General Counsel, FDIC). -11- 11 When determining the substantive meaning of a statute, "[f]irst, always, is the question of whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. Here, the parties frame _______ the issue as whether a state, acting under its abandoned property statute, may "claim" the insured value of abandoned deposits held in failed banks. The crux of the matter, however, is whether a state acting on behalf of absent depositors may itself qualify as a depositor under 1822(e). We do not believe the plain language of 1822(e) answers this question. That the FDIC apparently viewed the matter in inconsistent ways reinforces this conclusion. Other indicia of the statute's meaning, particularly the legislative history, thus come into play. Wilson v. Bradlees, 96 F.3d ______ ________ 552, 555 (1st Cir. 1996). The Commonwealth's claim arises not under 1822(e) as it was originally enacted in the 1935 amendments to the Banking Act of 1933, but under the "reenactment" of 1822(e) in 1993 as part of the UDAA.10 Consequently, we must  ____________________ 10. We use the term "reenactment" as a convenient shorthand. Section 2(b) of the UDAA states: Special rule for receiverships in _________________________________________ progress.--Section 12(e) of the Federal ________ Deposit Insurance Act [subsec. (e) of this section] as in effect on the day before the date of enactment of this Act [June 28, 1993] shall apply with respect to insured deposits in depository institutions for which the Corporation -12- 12 consider two different bodies of legislative history, that of the original version of 1822(e) from 1935 and that of the UDAA. The 1935 legislative history provides no guidance on this issue. However, the proceedings leading to the enactment of the UDAA do shed some light on the matter. At the congressional hearings on the UDAA, two senior agency officials testified as to the agency's post-1988 interpretation of 1822(e). Congress did not, however, cause the new version of 1822(e) to apply to banks placed in receivership between January 1, 1989 and June 28, 1993, despite lobbying by the states. Congress is often deemed to have adopted an agency's interpretation of a statute when, knowing of the agency interpretation, it reenacts the statute without significant change. FDIC v. Philadelphia Gear Corp., 476 ____ ________________________ U.S. 426, 437 (1986). The legislative history thus suggests ________  ____________________ was first appointed receiver during the period between January 1, 1989 and the date of enactment of this Act [June 28, 1993], except that such section 12(e) [subsec. (e) of this section] shall not bar any claim made against the Corporation by an insured depositor for an insured or transferred deposit, so long as such claim is made prior to the termination of the receivership. Technically, then, Congress did not reenact the pre-1993 version of 1822(e), but rather caused it to apply to banks placed into receivership between January 1, 1989 and June 28, 1993. -13- 13 that Congress wanted unclaimed deposits in banks placed into receivership during the relevant period to revert to the FDIC. But FDIC-Corporate's argument that "[b]y enacting the UDAA, Congress has erased any question that 1822(e) requires unclaimed insurance benefits to be returned to the FDIC" overstates the case. Congress may simply have chosen not to enter the fray as to the past. While the legislative history of the UDAA is instructive, it is not dispositive. Congress' intent remains ambiguous. Accordingly, the question of how much deference to accord the interpretation advanced by FDIC-Corporate must be considered. An agency's formal interpretation, through a rulemaking or an adjudication, of a statute it administers, is accorded what has come to be known as Chevron deference. _______ Davis & Pierce, Administrative Law Treatise 3.5, at 119 (3d ___________________________ ed. 1994); see also Chevron, 467 U.S. at 842-43. Under ___ ____ _______ Chevron, if a statute is ambiguous with respect to the _______ contested issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Contrary to the _______ Commonwealth's argument, an agency certainly does not lose its entitlement to deference by changing its position on a matter entrusted to it by Congress. Rust v. Sullivan, 500 ____ ________ U.S. 173, 186 (1991). Indeed, Chevron itself involved a case _______ where the agency changed its position in a formal rulemaking. -14- 14 467 U.S. at 863-64. "[T]he whole point of Chevron is to _______ leave the discretion provided by the ambiguities of a statute with the implementing agency." Smiley, 116 S. Ct. at 1734. ______ Less formal interpretations -- policy statements, guidelines, staff instructions, and litigation positions -- are not accorded full Chevron deference. Davis & Pierce, _______ supra, 3.5, at 119-20; see also Massachusetts v. Blackstone _____ ___ ____ _____________ __________ Valley Elec. Co., 67 F.3d 981, 991 (1st Cir. 1995) (agency's _________________ litigation position not entitled to Chevron deference).11 _______ Here, the change in policy regarding treatment of abandoned deposits could not have been more informal. The new policy was merely announced in a 1988 presentation by one of the FDIC's staff attorneys at a conference of the National Association of Unclaimed Property Administrators. FDIC-  ____________________ 11. Chevron involves a recognition that courts are poorly _______ situated to make policy choices concerning the interpretation of statutes whose enforcement is entrusted to administrative agencies. Judges are not experts in the field, nor are they part of either of the political branches. Davis & Pierce, supra, 3.3, at 113-15. But commentators have also noted _____ the possible anti-democratic implications of too much deference to the administrative agencies. See, e.g., Farina, ___ ____ Statutory Interpretation and the Balance of Power in the _____________________________________________________________ Administrative State, 89 Colum. L. Rev. 452, 510-11 (1989). ____________________ According full Chevron deference to FDIC-Corporate's _______ position raises a similar concern. This case in the end involves a dispute between a state and an administrative agency of the federal government and, as well, questions about the role Congress intended state law to play in a federal scheme. Congress should not be lightly thought to have wished such sensitive questions to be handled through informal and unexplained "policies" of an executive branch agency. The FDIC may, of course, choose to solve this difficulty by engaging in more formal processes. -15- 15 Corporate then proceeded to deny states' proofs of claim. The agency did not even issue a formal statement of its reasons for the change. This is not to say that FDIC-Corporate's position would be entitled to no deference. An established __ administrative practice interpreting a statute may be entitled to deference even if not yet reduced to specific regulation. Philadelphia Gear, 476 U.S. at 439. ___________________ Additionally, less formal agency determinations may be accorded something less than full Chevron deference. Davis _______ & Pierce, supra, 3.5, at 122. _____ In the end, however, we need not precisely ascertain the amount of deference to give the FDIC's interpretation of 1822(e), because the outcome would be unaffected. FDIC-Corporate's reading of the provision comports with the intent, suggested by the legislative history of the UDAA, that the insured value of abandoned accounts revert to the FDIC insurance funds, where these resources can be used to defray the costs of future bank failures. The states themselves pay nothing into the fund to secure insurance for their citizens. Any payment to a state is thus a windfall, a result at least in part at odds with the purpose of the insurance system.12 The FDIC's position  ____________________ 12. Massachusetts responds that allowing it to receive the insurance proceeds would advance the interests of depositors, whose claims would never be extinguished under the MAPA. -16- 16 is, in context, an eminently reasonable interpretation of the statute. B. Pre-emption ______________ The district court held that 1822(e) pre-empts the MAPA with respect to the insured value of abandoned deposits in failed banks. Our review of this decision is plenary. New Hampshire Motor Transp. Ass'n v. Town of ____________________________________ ________ Plaistow, 67 F.3d 326, 329 (1st Cir. 1995), cert. denied, 116 ________ ____________ S. Ct. 1352 (1996). As a general matter, the standards articulated in Louisiana Public Service Commission v. FCC, 476 U.S. 355 _____________________________________ ___ (1986), guide the inquiry into whether a federal provision pre-empts state law: Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of  ____________________ Under federal law, the claim is extinguished eighteen months after the appointment of a receiver or at the termination of the receivership estate, whichever occurs later. Pub. L. No. 103-44, 2(b) (1993). While the Commonwealth's statement may be theoretically true, experience shows that the vast majority of the funds are never claimed and so it is the state that usually benefits. -17- 17 the full objectives of Congress. Pre- emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation. Louisiana Pub. Serv. Comm'n, 476 U.S. at 368-69 (internal _____________________________ citations omitted). The inquiry here has an additional layer of complexity due to Massachusetts' assertion, based on Delaware ________ v. New York, 507 U.S. 490 (1993), that regulating the _________ disposition of abandoned property is a traditional exercise of state authority. See id. at 502. When Congress ___ ___ legislates in an area traditionally within the purview of the states, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, ____ ________________________ 230 (1947). Congress may signal such intent by an express statement of pre-emption or by pervasive regulation of the area. The presumption against pre-emption may also be rebutted when there is a dominant federal interest or when state law produces a result inconsistent with the federal statute. Id. ___ There is no express pre-emption clause in the legislation at issue here, such as there was in the statutory scheme implicated in the recently decided Medtronics, Inc. v. ________________ Lohr, 116 S. Ct. 2240, 2250 (1996). Nor is federal ____ -18- 18 regulation of bank failures so pervasive that it indicates an intent to preclude any supplementation by state law.13 However, as the district court aptly noted, the federal government has a strong interest in regulating responses to bank failures, particularly when the guarantee of federal insurance is involved. Massachusetts v. FDIC, 916 F. Supp. _____________ ____ at 59. There also are actual conflicts between the FDIA and the MAPA, and so compliance with both federal and state law is not possible. In light of the reasonableness of the determination that states acting under abandoned property statutes do not qualify as depositors under 1822(e), any state law conferring on Massachusetts the right to act as a depositor necessarily conflicts directly with federal law. Another fundamental inconsistency between federal and state law concerns the ultimate disposition of insurance proceeds for abandoned accounts. While the MAPA requires that FDIC-Corporate turn over insured deposits and that  ____________________ 13. In other areas, where Congress has intended to pre-empt state abandoned property statutes, it has done so explicitly. Cf. 31 U.S.C. 1322(c)(1) (certain sums to be held in ___ Treasury account notwithstanding state abandoned property laws). Accordingly, any congressional intent to occupy the field here could be expected to be more clearly stated. E.g., Louisiana Pub. Serv. Comm'n, 476 U.S. at 377 (declining ____ ___________________________ to find field pre-emption where federal statute neither expressly refers to state law nor uses the word "pre- emption"); Grenier v. Vermont Log Bldgs., Inc., 96 F.3d 559, _______ _________________________ 563 (1st Cir. 1996) (even with express pre-emption clause, Congress did not intend to occupy the field totally). -19- 19 transferee banks turn over transferred deposits to the Commonwealth, under the relevant version of 1822(e), these funds revert to one of FDIC-Corporate's insurance funds either after eighteen months or at the termination of the receivership estate, whichever occurs later. Pub. L. No. 103-44, 2(b) (1993). And there is conflict, not congruence, between other portions of the statutory schemes as well. For example, state and federal law conflict over the time frame in which a depositor may claim an abandoned deposit. The relevant version of the federal provision eventually extinguished a depositor's right to an unclaimed deposit, while the MAPA extends the right of a depositor to make a claim in perpetuity.14 Mass. Gen. L. ch. 200A, 10(a). We conclude that 1822(e) pre-empts the MAPA with respect to the federal scheme for deposits that are abandoned and therefore that the Commonwealth is not entitled to the claimed insurance proceeds.  ____________________ 14. There are other differences as well. Section 1822(e) requires FDIC-Corporate to mail two notices regarding any unclaimed deposit, whatever its amount, the first thirty days after insurance payments are inititated and the second fifteen months later, to the last known address of the depositor. The MAPA would require FDIC-Corporate to send out additional information: a report to the State Treasurer describing any property abandoned under the MAPA, and a notice to the owner of any account containing more than $100. Mass. Gen. L. ch. 200A, 7, 7(A). However, while different, these notice requirements do not actually conflict with each other. -20- 20 Massachusetts makes a final argument that it is entitled to the insurance proceeds because, as a matter of federal law, it is a fiduciary for depositors. Federal regulations acknowledge that there may be "fiduciaries" or "custodians" whose status is apparent from the books and records of the failed bank and who, as a matter of federal law, are permitted to stand in the shoes of the depositors for some purposes. 12 C.F.R. 330.4, 330.6 (1996). The Commonwealth argues that it qualifies as a fiduciary whose status is apparent from the banks' deposit account records and that it therefore is entitled under the federal regulations to the insured value of abandoned deposits. This argument fails because the Commonwealth locates the source of its fiduciary status in state law provisions that are pre- empted by the applicable version of 1822(e).15 IV.  ____________________ 15. Additionally, the district court correctly ruled that the Commonwealth's claimed fiduciary status is not readily apparent from the face of the banks' deposit account records as required by the regulations. Massachusetts v. FDIC, 916 _____________ ____ F.Supp. at 60. Massachusetts argues that the district court's cramped interpretation of the term "deposit account records" is at odds with the more expansive approach of FDIC ____ v. Fedders Air Conditioning, 35 F.3d 18 (1st Cir. 1994) _________________________ (noting that "deposit account records" include a variety of items). But unlike the interpretation urged here by the Commonwealth, Fedders involved discrete items contained in _______ the bank files and did not require the FDIC to cross- reference deposit account records with abandoned property reports that might not even be kept at the banks. This process would "corrode the FDIC's core mission" of quickly determining insurance liability. Massachusetts v. FDIC, 916 _____________ ____ F. Supp. at 60. -21- 21 The Commonwealth also argues that the district court erred in dismissing as time-barred Massachusetts' claim as a creditor of the receivership estate, Massachusetts v. _____________ FDIC, 916 F. Supp. at 61. The FDIA sets statutory bar dates ____ for claims against FDIC-Receiver. The district court lacks subject matter jurisdiction over any claim not filed in accordance with these requirements. 12 U.S.C.  1821(d)(13)(D). Accordingly, the district court dismissed the action. That dismissal was correct. Creditors must file their claims with FDIC-Receiver by the date specified in a published notice.16 This date must be at least ninety days after the publication of the notice. 12 U.S.C. 1821(d)(3)(B)(i). Claims not filed by the specified date are time-barred. Id. (5)(C)(i); Simon v. ___ _____ FDIC, 48 F.3d 53, 56 (1st Cir. 1995); Marquis v. FDIC, 965 ____ _______ ____ F.2d 1148, 1152 (1st Cir. 1992). The one statutory exception to the claims bar is for creditors who did not receive notice of the appointment of the receiver in time to comply with the filing date, but who did file the claim in time to permit payment. 12 U.S.C. 1821(d)(5)(C)(ii). Massachusetts did not meet the filing deadline for creditors. Nor did its claims fall within the statutory exception: the Commonwealth had prompt notice of the  ____________________ 16. This notice is also mailed to all creditors shown on the institution's books. Id. 1821(d)(3)(C). ___ -22- 22 appointment of receivers for the failed bank. Massachusetts presents two basic arguments why it should receive a more generous filing period: that it is not just a creditor but stands in the shoes of depositors as a fiduciary or conservator, and that the FDIC in the past had permitted it to do so and is now bound by that prior position. Massachusetts' theory appears to be that as a fiduciary of the depositors, it had no claim against FDIC-Receiver for the pro rata value of the abandoned deposits until the expiration of depositors' rights to claim the insured value of their accounts. According to the Commonwealth, its 90-day filing period17 for claims against the receivership estate only began to run eighteen months after the appointment of a receiver for the failed banks, effectively creating a time limit of eighteen months plus ninety days.18 FDIC-Receiver's position is that states are not entitled to the more lenient time limits applicable to depositors filing as creditors. This position has the virtue of being largely consistent with the view taken by FDIC-  ____________________ 17. The statute says that the FDIC may specify any period ninety days or longer. In this case, as in most others, FDIC-Receiver set a 90-day filing period. 18. The premise on which this argument is based is incorrect: since the enactment of the UDAA, depositors have the longer of 18 months or until the end of the receivership estate to file insurance claims. Pub. L. No. 103-44, 2(b) (1993). -23- 23 Corporate.19 Further, this decision is not economically irrational. It protects the federal insurance funds to a certain extent, thereby reducing the cost of the thrift clean-up to the taxpayer. FDIC-Receiver pays out what is left of deposits pro rata to creditors. FDIC-Corporate is itself a creditor of the receivership estate to the extent that it has paid insurance and became subrogated to depositors' rights. 12 U.S.C. 1821(g). FDIC-Receiver's policy gives creditors a small window to assert their claims, which benefits all timely claimants, including FDIC-Corporate as subrogee. The Commonwealth's claim that it stands in the shoes of depositors fails. The claim is based on the premise that Massachusetts can be a depositor under 1822(e) and also requires that 1822(e) be read together with 1821(d), the statutory provision setting forth the bar dates. However, nothing in the language of these provisions suggests that they should be read together. Moreover, for the reasons outlined earlier, FDIC-Corporate's determination that the Commonwealth does not stand in the shoes of depositors is a reasonable one. Because the Commonwealth cannot stand in the  ____________________ 19. FDIC-Receiver has apparently chosen to treat the Commonwealth acting under the MAPA as a general creditor for the purposes of the claims bar statute, notwithstanding the FDIC's determination that the MAPA does not render the Commonwealth a depositor for purposes of 1822(e). The basis for this choice is not before us. -24- 24 shoes of depositors, its argument that its claim did not arise until the end of the 18-month period for filing insurance claims with FDIC-Corporate is unavailing.20 The argument that Massachusetts should be allowed the more generous filing period because it had been allowed that time period in the past also fails. The language of  1821(d) itself is clear. The receiver must "promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice," 12 U.S.C.  1821(d)(3)(B)(i), and "claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final," id.  ___ 1821(d)(5)(C)(i). FDIC-Receiver's interpretation of the statute, that a state must file its claim against the receivership within ninety days of receiving notice from the FDIC or be barred from doing so in the future, tracks the plain statutory language. The statutory language does not admit the distinction the Commonwealth urges between so- called "deposit" creditors and "trade" creditors. Even were there some ambiguity about whether 1821(d) should be read in light of 1822(e), reading the two sections together does  ____________________ 20. While it is true that a claimant may not file until his claim comes into being, Heno, 20 F.3d at 1209, here the ____ claims arose, if at all, before the banks failed. -25- 25 not extend the claims bar date for creditors of the receivership estate. Further, it is far from clear that there has been any reversal of "policy" by the agency on this point. Even viewing the evidence in the light most favorable to the Commonwealth, as required in reviewing the district court's grant of summary judgment, Hodgkins v. New England Tel. Co., ________ ____________________ 82 F.3d 1226, 1229 (1st Cir. 1996), there is no support for the argument that FDIC-Receiver had a consistent policy of honoring states' claims filed within eighteen months plus ninety days of receiving notice of the receivership. The Commonwealth's case rests on two pieces of evidence. First, FDIC-Receiver sent a letter to the Commonwealth, dated July 1993, containing language that Massachusetts views as confirming the alleged policy. This interpretation is not supported by the language of the letter. Second, FDIC- Receiver honored an untimely claim by Massachusetts for abandoned deposits held in one of the banks that failed around the same time as the other banks involved in this litigation. An isolated settlement decision is not evidence of a prior policy. V. The judgment of the district court is affirmed. No ________ costs are awarded. -26- 26